**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                    :
                                                :
      Plaintiff,                           :   Civil Action No. 1:21-cv-3775
                                                :
v.                                              :   **COMPLAINT FOR VIOLATIONS OF**
                                                :   **SECTIONS 14(a) AND 20(a) OF THE**
COHERENT, INC., GARRY ROGERSON,                 :   **SECURITIES EXCHANGE ACT OF**
PH.D., ANDY MATTES, JAY T. FLATLEY,             :   **1934**
PAMELA FLETCHER, BEVERLY KAY                    :
MATTHEWS, MICHAEL MCMULLEN,                     :   **JURY TRIAL DEMANDED**
STEVE SKAGGS, SANDEEP VIJ,                      :
                                                :
      Defendants.                          :
                                                :
---------------------------------------------------------:
                                                :
                                                :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Coherent, Inc., ("Coherent or the "Company") and the members Coherent's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Coherent and II-VI Incorporated and its affiliates ("II-VI").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on April 27, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Watson Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of II-VI, will merge with and into Coherent with Coherent surviving as a wholly owned subsidiary of II-VI (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Coherent stockholder will receive: (i) $220 in cash; and (ii) 0.91 of a share of II-VI common stock (the "Merger Consideration").

3. As discussed below, Defendants have asked Coherent's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors BofA Securities, Inc. ("BofA") and Credit Suisse Securities (USA) LLC ("Credit Suisse" and together with BofA, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Coherent's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Coherent is listed on the NASDAQ Stock Exchange, which is headquartered in this District. Coherent's Financial Advisors each are headquartered in this District, and the proxy solicitors of both Coherent and II-VI are each headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Coherent stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Garry Rogerson, Ph.D. has served as a member of the Board since June 2007 and is the Chairman of the Board.

11. Individual Defendant Andy Mattes has served as a member of the Board since July 2014.

12. Individual Defendant Deborah Dunsire, M.D. has served as a member of the Board, the Company's Chief Executive Officer and President since April 2020.

13. Individual Defendant Jay T. Flatley has served as a member of the Board since 2011.

14. Individual Defendant Pamela Fletcher has served as a member of the Board since 2017.

15. Individual Defendant Michael McMullen has served as a member of the Board since 2018.

16. Individual Defendant Steve Skaggs has served as a member of the Board since 2013.

17. Individual Defendant Sandeep Vij has served as a member of the Board since 2004.

18. Defendant Coherent is a Delaware corporation and maintains its principal offices at 5100 Patrick Henry Drive, Santa Clara, California 95954. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "COHR."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Coherent provides lasers, laser-based technologies, and laser-based system solutions for a range of scientific, commercial, and industrial research applications. It operates in two segments, OEM Laser Sources and Industrial Lasers & Systems. The Company designs, manufactures, markets, and services lasers, laser tools, precision optics, and related accessories; and laser measurement and control products. Its products are used for applications in microelectronics, materials processing, original equipment manufacturer components and

instrumentation, and scientific research and government programs. The Company markets its products through a direct sales force in the United States, as well as through direct sales personnel and independent representatives internationally. Coherent was founded in 1966 and is headquartered in Santa Clara, California.

22.     On March 25, 2021, the Company announced that the Company had terminated a prior merger agreement with Lumentum Holdings Inc. after the Board evaluated the superior proposal from II-VI:

> SANTA CLARA, Calif., March 25, 2021 /PRNewswire/ -- Coherent, Inc. (NASDAQ: COHR) today announced that its board of directors has determined, after consultation with its financial and legal advisors, that the previously disclosed acquisition proposal Coherent received from II-VI Incorporated (NASDAQ: IIVI) on March 17, 2021 continues to be a "Company Superior Proposal" under Coherent's March 9, 2021 merger agreement with Lumentum Holdings Inc. (NASDAQ: LITE) after giving due consideration to the revised acquisition proposal Coherent received from Lumentum on March 22, 2021. In making its determination, the Coherent board of directors evaluated the comparative benefits and risks of the II-VI and Lumentum proposals, including the near-term and long-term financial opportunities and risks presented by each proposal, the potential synergies available through a combination with each company, and the complementary businesses of each company.
>
> Accordingly, Coherent is terminating the March 9, 2021 merger agreement between Coherent and Lumentum and paying Lumentum the $217.6 million termination fee contemplated by their merger agreement in order to enter into a new merger agreement with II-VI.
>
> Under the terms of Coherent's merger agreement with II-VI, each share of Coherent common stock will be exchanged for $220.00 in cash and 0.91 of a share of II-VI common stock at the completion of the transaction. The transaction with II-VI is subject to approval by the stockholders of Coherent and II-VI, receipt of U.S. and foreign regulatory approvals and other customary closing conditions. The transaction is expected to close in the fourth quarter of 2021.

>Bank of America and Credit Suisse are serving as financial advisors to Coherent, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor.

\* \* \*

23. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Coherent's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

24. On April 27, 2021 Coherent and II-VI jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial

forecasts (the "Company Projections" and "II-VI Projections") and provided them to the Board, the Financial Advisors, II-VI, and II-VI's financial advisors by management of Coherent and II-VI with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA; Non-GAAP Earnings Per Share; and Unlevered Free Cash Flow but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     For the II-VI Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA; Non-GAAP Earnings Per Share; Unlevered Free Cash Flow; and Net Operating Profit, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory

mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to BofA's *Selected Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose the closing dates and value for each of the transactions observed by BofA in the analysis.

32. With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the terminal values for the Company; (ii) line items

used to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the perpetuity growth rates ranging from 3.0% to 4.0%; (iv) the inputs and assumptions underlying the discount rates ranging from 8.5% to 11.5%; (v) the Company's weighted average cost of capital.

33. With respect to BofA's *Discounted Cash Flow Analysis* for II-VI, the Registration Statement fails to disclose: (i) the terminal values for II-VI; (ii) line items used to calculate II-VI's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the perpetuity growth rates ranging from 2.5% to 3.5%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.0% to 9.0%; (v) II-VI's weighted average cost of capital.

34. With respect to BofA's *Pro Forma Analysis*, the Registration Statement fails to disclose: (i) the implied equity value of net estimated cost savings to the combined company; (ii) the inputs and assumptions underlying the perpetuity growth rates ranging from 3.0% to 4.0%; (iii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 11.5%; (iv) the decrease in cash from the merger to the combined company.

35. With respect to Credit Suisse's *Selected Transactions Analysis Regarding Coherent*, the Registration Statement fails to disclose the closing dates and values for each transaction observed by Credit Suisse in the analysis.

36. With respect to Credit Suisse's *Discounted Cash Flow Analysis Regarding Coherent*, the Registration Statement fails to disclose: (i) the inputs and assumptions for applying a range of terminal value multiples of 10.0x to 12.0x to the Coherent Adjusted EBITDA estimate for the fiscal year ending September 2026; (ii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; (iii) weighted average cost of capital.

37.     With respect to Credit Suisse's *Discounted Cash Flow Analysis Regarding II-VI*, the Registration Statement fails to disclose: (i) the inputs and assumptions for applying a range of terminal value multiples of 9.5x to 11.5x to the II-VI Adjusted EBITDA estimate for the fiscal year ending June 2026; (ii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 10.0%; (iii) weighted average cost of capital.

38.     With respect to Credit Suisse's *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions for applying a range of terminal value multiples of 10.0x to 12.0x to the estimated pre-tax synergies for calendar year 2024; (ii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; and (iii) the incremental debt expected to result from the Proposed Transaction.

39.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Coherent within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Coherent, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Coherent, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Coherent, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

50.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 28, 2021

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

14